UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTHUR L. PAYNE,<br><br>    Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | CASE NO. 2:16-CV-01958-RSL-DWC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: June 30, 2017 |

  The District Court has referred this action, filed pursuant to 42 U.S.C § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff seeks judicial review of the Defendant's denial of the Plaintiff's application for Disability Insurance Benefits ("DIB").

  After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the medical opinion of one of Plaintiff's examining psychologists. Therefore, the undersigned recommends the entry of an Order, pursuant to sentence four of 42 U.S.C. § 405(g), reversing the ALJ's decision and remanding for further proceedings.

## PROCEDURAL & FACTUAL HISTORY

On January 10, 2014, Plaintiff filed an application for DIB. *See* Dkt. 7, Administrative Record ("AR") 145-48. Plaintiff alleges he became disabled on June 1, 2009 due to bipolar disorder, depression, herniated discs, COPD, congestive heart failure, edema, and obesity. *See* AR 145, 168. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 85, 89. A hearing was held before an ALJ on April 7, 2015, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 35.

On June 2, 2015, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 27, 2016, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On July 14, 2016, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for an award of benefits, or alternatively for further proceedings, because the ALJ failed to properly evaluate the opinion of Plaintiff's examining psychologist, Dana Harmon, Ph.D. Dkt. 9, p. 1.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

    **A. Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

**B. Application of Standard**

Dr. Harmon conducted a five-day evaluation of Plaintiff from March 20 through March 25, 2015. AR 273. Dr. Harmon conducted a review of Plaintiff's records, including records from Plaintiff's longstanding primary treatment provider, Dr. Katernia Riabova, which reflect Plaintiff carried diagnoses of Bipolar II Disorder, Attention-Deficit/Hyperactivity Disorder, and Opiod Dependence. AR 273. Dr. Harmon also noted Plaintiff had received psychiatric treatment from Dr. Riabova for "the past six or seven years." AR 274. On examination, Plaintiff presented as depressed-looking with marginal hygiene and grooming. AR 275. Plaintiff exhibited depressed, anxious, and overwhelmed mood and affect, and exhibited tangential and obsessive thought process while upset. AR 275-76. Plaintiff also exhibited poor concentration and easy confusion during the evaluation, as indicated by a Mini Mental Status Examination score of 27 and an inconsistent ability to follow multi-step directions. AR 276. Plaintiff's answers on the Rey 15 Item Test of Malingering and the Reliable Digit Span indicated good effort and cooperation with testing protocols. AR 275.

Dr. Harmon diagnosed Plaintiff with Bipolar II disorder, depressed, severe; Opioid Use Disorder, severe, on agonist therapy; rule-out ADHD, Somatization Disorder, and borderline personality traits. AR 281. As a result of these impairments, Dr. Harmon opined Plaintiff would be severely limited in his ability to interact appropriately with co-workers, supervisors, or the public, or respond appropriately to usual work situations and to changes in a routine work setting. AR 279. Dr. Harmon also opined Plaintiff would have marked limitations in his ability to: make judgments on simple work-related decisions; understand, remember, and carry out complex instructions; and make judgments on complex work-related decisions. AR 277.

1    The ALJ gave Dr. Harmon's opinion little weight for six reasons:

2    [1] Dr. Harmon's opinion is over two years after the date last insured. [2] His assessment is inconsistent with treatment notes during the relevant period. [3] I note that he only reviewed records from August 2011 to April 2014, yet he assessed decreased functioning since 2009. He had no evidence to support any mental health impairment prior to August 2011. [4] As discussed, treatment notes show progressive improvement in symptoms and overall mental health stability. [5] Dana Harmon also includes the claimant's alleged physical problems, which is outside of his area of expertise. [6] Furthermore, aside from issues with weight gain, the claimant had minimal physical complaints during the relevant period.

7    AR 28 (numbering added).

8    First, the fact Dr. Harmon's opinion was rendered after Plaintiff's date last insured does not diminish its validity in assessing Plaintiff's condition during the relevant period. *See Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("Evidence post-dating the [date last insured] is probative of Turner's pre-[date last insured] disability"); *Lester*, 81 F.3d at 832 (noting the fact an opinion was rendered after a claimant's date last insured was not a specific and legitimate reason for discounting a treating physician's opinions). Here, Dr. Harmon reached his conclusions concerning Plaintiff's limitations based, in part, on his review of Plaintiff's medical records from before the date last insured. He further opined Plaintiff's symptoms and limitations have likely persisted since at least 2009. AR 281. Thus, Dr. Harmon's opinion is still relevant to the period at issue in this case.

Second, the ALJ takes issue with Dr. Harmon's conclusion Plaintiff's symptoms and limitations likely persisted since at least 2009, as "[h]e had no evidence to support any mental health impairment prior to August 2011." AR 273. However, while Dr. Harmon only had treatment notes from Dr. Riabova between August 11, 2011 through April 29, 2014, Dr. Harmon indicated Dr. Riabova had been Plaintiff's treating psychiatrist since at least 2008. AR 273. A review of Dr. Riabova's earliest available treatment notes indicates she was continuing a pre-

existing course of treatment rather than beginning treatment in August of 2011. AR 235 (treatment note from August 11, 2011, noting "no change in meds."). Further, evidence submitted to the Appeals Council reflects Dr. Riabova, Plaintiff's treating psychiatrist, had treated Plaintiff for bipolar disorder "since 2007 or 2008," further corroborating Dr. Harmon's opinion as to the duration of Plaintiff's mental health impairments. AR 282.[1] The ALJ's reasoning for discounting Dr. Harmon's opinion due to a lack of available records is unsupported by substantial evidence.

Third, the ALJ states Dr. Harmon's opinion is inconsistent with treatment notes from the relevant period, and that treatment notes show progressive improvement. AR 28. However, these are bare, conclusory statements made without any citation to the purportedly inconsistent treatment notes. An ALJ must do more than state his or her conclusions; he must "set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. The ALJ's failure to do so here is error. In fact, a review of treatment records cited elsewhere in the decision do not reveal any apparent contradictions with Dr. Harmon's clinical findings or diagnosis of bipolar disorder, nor do they reveal the "progressive improvements" the ALJ alleges. Plaintiff cycled between euthymic and depressed moods, and displayed cycles of increasing and declining mental health. *See* AR 220-23, 232-35. This is further supported by evidence submitted to the Appeals Council which reflects Dr. Riabova has been treating Plaintiff

---

[1] A Court may consider new evidence which was presented for the first time to the Appeals Council when evaluating whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r, Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

for bipolar disorder "since 2007 or 2008." AR 282. Notably, the ALJ did not consider Plaintiff's bipolar disorder to be a medically determinable impairment. AR 24. This is critical, as bipolar disorder is a mental impairment which presents on an episodic basis. *Kangali v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2011) ("[The ALJ thought the medical witnesses had contradicted themselves when they said the Plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits. There was no contradiction; bipolar disorder is episodic.").

"[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (9th Cir. 2011). *Cf. Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (holding it was error to reject a claimant's testimony "merely because symptoms wax and wane in the course of treatment."), *Delegans v. Colvin*, 584 Fed.Appx. 328, 330-32 (9th Cir. 2014). In order for the ALJ to rely on examples of inconsistent symptom severity or treatment, the ALJ was required to explain *why* the examples of inconsistent mental health symptoms were, in fact, examples of improvements or true discrepancies, rather than the ebb and flow of the claimant's mental impairments. *Garrison*, 759 F.3d at 1018 (observing that, while the claimant's various conditions and symptoms would come and go, the claimant consistently had diagnoses of bipolar disorder and PTSD, and continually had GAF scores in the range of 50 to 55). Had the ALJ considered Plaintiff's bipolar disorder in this case, the ALJ would have been required to explain why the inconsistencies in question were not attributable to the Plaintiff's ongoing mental issues. Thus, the ALJ's findings concerning inconsistencies between Dr. Harmon's opinion and other treatment notes are unsupported by substantial evidence.

1       Regarding Dr. Harmon's consideration of Plaintiff's physical problems, the ALJ's last
2 two reasons are unsupported by substantial evidence. Dr. Harmon explicitly opines Plaintiff's
3 "depression, anxiety, mood swings, irritability, and sense of being overwhelmed would be
4 significant obstacles to his employability, particularly in regards to his ability to cope with the
5 pressures and expectations of a normal work situation, manage stress, and respond appropriately
6 to supervisors, co-workers, and changes in the work setting." AR 280. To the extent Dr. Harmon
7 does discuss Plaintiff's physical issues, he notes "[Plaintiff's] medical providers would be the
8 best source of information about this." AR 280. Further, Dr. Harmon's observations of Plaintiff's
9 obesity were relevant to Dr. Harmon's assessment of Plaintiff's motor activity, for no other
10 reason than to differentiate between motor activity issues with a mechanical, psychological, or
11 neurological cause. AR 275. In fact, the Diagnostic and Statistical Manual of Mental Disorders,
12 Fifth Edition ("DSM-5") requires clinicians to consider and rule out the potential effects of other
13 medical conditions. *See, e.g.*, *Bipolar II Disorder*, DSM-5, 133 (5th ed. 2014); *278.00,*
14 *Overweight or Obesity*, DSM-5, 726.  As Dr. Harmon's opinion was not predicated on Plaintiff's
15 physical limitations, the ALJ's reasoning is neither specific nor legitimate, nor is it supported by
16 substantial evidence. *Delegans*, 584 Fed.Appx. at 331. *See Jenks v. Colvin*, 2015 WL 736821, at
17 *3 (W.D. Wash. Feb. 20, 2015) *Mills v. Astrue*, 2009 WL 586111, at *4 (W.D. Wash. March 5,
18 2009).

19       Because the ALJ failed to offer specific and legitimate reasons, supported by substantial
20 evidence, for discounting Dr. Harmon's opinion, the ALJ erred. Further, as Dr. Harmon's opined
21 limitations are not otherwise incorporated into the residual functional capacity finding, the ALJ's
22 errors are not "inconsequential to the ultimate nondisability determination," and require remand
23 for further proceedings. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

24

II. <u>Whether the Case Should be Remanded for an Award of Benefits.</u>

Plaintiff argues the case should be remanded for an award of benefits, rather than for further proceedings.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has established a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This test, often referred to as the "credit-as-true" rule, is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Nonetheless, an ALJ's errors are relevant only to the extent they impact the underlying question of Plaintiff's disability. *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that

a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).

Here, outstanding issues must be resolved. Plaintiff argues that, were Dr. Harmon's opinion credited as true and his opined limitations included in the residual functional capacity finding, the ALJ would be required to find Plaintiff disabled. However, the hypotheticals propounded to the vocational expert at the hearing did not appear to include Dr. Harmon's opined limitations; thus, before a finding of disability would be proper, further vocational expert testimony as to Dr. Harmon's opined limitations would be necessary. A remand for further proceedings, rather than an award of benefits, is appropriate in this case.

## CONCLUSION

Based on the above stated reasons and the relevant record, the undersigned recommends the ALJ's opinion be vacated and this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings. Judgment should be for Plaintiff and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 30, 2017, as noted in the caption.

Dated this 12th day of June, 2017.

David W. Christel
United States Magistrate Judge